AUSTIN *v.* HAYDEN.

1. EVIDENCE—BOOKS OF ACCOUNT—ACCOUNTING—TORT-FEASORS.

Books of account of an insolvent brokerage firm, showing the balances due to certain customers or creditors, were admissible in evidence, on an accounting, in which a correspondent firm is held to have been a joint tort-feasor with the insolvent in dealing with or converting securities entrusted by customers to the insolvent brokers.

2. INSOLVENCY—MARSHALING ASSETS—BROKERS—RECEIVERS.

In determining priorities among claimants from assets of an insolvent firm of brokers, defendant brokerage firm, which was held to have notice of the equities of claimants after a date fixed by the decree of the court, was correctly required to account to customers of the insolvent who had cash balances to their credit on the day stated: their accounts were not blended so as to deprive them of this right by purchasing or dealing in securities subsequent to that date.

3. SAME.

Also, claimants, who on the date in question owned securities on margins in possession of the insolvent and were entitled to a considerable credit balance at that time, although they thereafter continued trading, were rightly allowed to trace their stock into the hands of the defendant correspondent as preferred claims.

Appeal from Wayne; Mandell, J. Submitted June 3, 1913. (Docket No. 1.) Decided July 9, 1913.

Bill by Fred G. Austin as receiver of Cameron Currie & Company, a copartnership, against Charles Hayden and others, copartners as Hayen, Stone & Company, for accounting and other equitable relief. Numerous intervening claimants presented claims for adjudication. Upon an appeal previously taken, a restatement of account was ordered by this court.

From the final order entered, defendants Hayden, Stone & Company appeal. Affirmed.

*Angell, Boynton, McMillan, Bodman & Turner,* for complainant.

*Alex J. Groesbeck* and *Guy A. Miller,* for intervener Miller.

*Miller, Smith, Paddock & Perry,* for intervener Hager.

*Stevenson, Carpenter & Butzel (Henry W. Beal,* of counsel), for defendants.

BROOKE, J. This case is now in this court a second time upon appeal. The opinion rendered in the earlier appeal will be found reported in 171 Mich. 38 (137 N. W. 317). The decree entered in this court in accordance with that opinion directed a recasting of the account by the court below and the making of a new classification. The decree provides:

"In such reclassification 'all claims arising on and after June 23, 1908, out of transactions, whether on margins or otherwise, in which defendants participated and ownership in property is satisfactorily traced shall constitute a new class to be collected in full from defendants,' and such claims when collected shall, in the final distribution of the fund in complainant's hands, be paid in full, less their proper proportion of the expenses of the receiver. Where identification of ownership cannot be determined by the court, claimants shall not participate in said new class, though shown to have dealt with Cameron Currie & Co. on and after said June 23d; but where ownership is satisfactorily traced by an intervener in dealings participated in by Hayden, Stone & Co. after that date their liability shall be determined irrespective of whether or not they yet held the securities so traced to them, on July 18, 1908. *No distinctive benefit shall accrue to any intervener from the blending of his accounts in transactions with Currie & Co. before and after said June 23d,* but his claim or claims

shall be individually determined as in case of separate person or persons, in one or more classifications, according to the facts found and as his relative right of participation may appear. In such readjustment, *defendants shall not be required to account twice for any stocks or securities traced as belonging to individual owners,* and in balancing defendants' liability and lien in relation to the total sum paid and to be paid complainant by defendants from the proceeds of sales of all stocks and securities heretofore held by them and disposed of by order of the court, due allowance shall be made for any stocks or securities, or the proceeds thereof, so traced, which are shown to have already come into the possession of complainant in such manner that further decree for their value would impose upon defendants double payment therefor."

Obeying this mandate, the Wayne circuit court recast the account, with the result that defendants' liability was increased by the sum of $142,649.56. Defendants have again appealed, claiming that, through an erroneous application of the language of the decree to the facts relating to certain claims of interveners, the above-mentioned sum is too large by $18,969.46. Defendants have classified the questioned items under three heads "A," "B," and "C," and we will follow this classification in discussing the matters in dispute.

Under class A there are four accounts, as follows:

| | |
|---|---:|
| A. B. Anthony | $280 63 |
| A. A. Bleasby | 733 28 |
| Harry Myers | 67 08 |
| John M. Cook | 1,081 71 |
| Total | $2,162 70 |

As we understand defendants' contention with relation to these items, they object to their allowance upon the sole ground that the interveners named did not appear in court personally and give evidence as to their claims. The accounts were proven by the evidence of Mr. McPherson, the expert accountant

who appears to have made a very thorough and painstaking examination of the books of Currie & Co. at the instance of the trustee.  Under our former holding that on and after June 23d defendants were joint tort-feasors with Currie & Co., the books of Currie & Co. were competent evidence against defendants. Aside from this, defendants do not claim nor intimate that the items questioned are in any particular incorrect.  We think they were properly allowed.

In class B there are six items, as follows:

| | |
|---|---:|
| Moses Blumrosen | $2,806 31 |
| L. A. Clapp | 536 43 |
| Arthur Deyoe | 411 99 |
| William A. Peters | 268 33 |
| Julius Hager | 3,823 35 |
| S. L. Smith | 4,682 32 |
| Total | $12,528 73 |

With reference to these six interveners it is the claim of defendants that their right to be included in the classification AA and receive from defendants compensation in full is based on a blending of each of their several accounts before and after June 23d, which is forbidden by the decree.

An examination of the accounts of the first four above-named interveners shows that in each case the intervener had on June 23d a cash credit balance upon the books of Currie & Co. with no stock transactions then outstanding or incomplete.  Thereafter and before July 18th, in each instance this balance was in whole or in part converted by the intervener into certain stock which has been satisfactorily traced to defendants under the terms of the decree.  Defendants contend that this transaction constituted a blending of accounts within the meaning of the decree because the purchases were made on the strength of credit balances existing on or prior to June 23d.

We do not agree with this contention.  The record

shows that Currie & Co. paid money demands freely up to the date of their suspension. It is fair to presume, therefore, that had these interveners demanded their money they would have received it. They would then have handed it back to Currie & Co: with instructions to purchase. Had they followed this course, defendants would not claim that they were not entitled to the classification they have received under the new decree. The fact that they did not go through this useless proceeding should not, in our opinion, be permitted to affect their rights.

As to the interveners Hager and Smith: These two accounts are different in form, though perhaps not in principle. On June 23d each of these men had an account with Currie & Co. which had been running for some time. They were each carrying a considerable number of shares of stock upon margin. Currie & Co. held the stock as security for the unpaid balance. Had they closed their accounts with Currie & Co. on June 23d, each would have had a cash credit balance of several thousand dollars. Instead of doing this, they continued trading, with the result that on July 18th defendants had in their possession certain stocks which the interveners could clearly trace and in which they held a considerable margin interest. We have concluded, though with some hesitation, that the lower court was correct in including these two accounts in the preferential class AA, and that the transactions out of which this result flows do not constitute such a blending of accounts as is forbidden by the terms of the decree.

In class C there are three items:

| Lydia Carleton | $247 18 |
| Carrie Hudnut | 423 65 |
| M. P. Scott | 3,749 21 |

These three interveners all dealt with Currie & Co. after June 23d, and, so far as appears by the record,

had not dealt with them before that date. They therefore are clearly entitled, under the terms of our former decree, to the classification given them.

Defendants do not controvert this position, but urge that in accounting directly to these three interveners they are compelled to account twice for the same stock, which is in terms forbidden by the decree of this court.

It is clear that in paying directly to these interveners through the receiver defendants account once for the stock, and thus discharge their entire liability touching the same. In the general accounting between the defendants and the receiver, therefore, the transactions out of which these three balances grow must be entirely eliminated and the account stated as though they had not taken place.

With reference to the claim of intervener Guy A. Miller, it appears that he was classified in AA for the sum of $4,891.57 upon the theory that the 100 shares of stock purchased by him were fully paid for. As a matter of fact he paid thereon $500 in cash and gave a check to Currie & Co. for the balance. This check was deposited with the People's State Bank, and Currie & Co. had credit therefor. Miller refused to pay the check, and suit was brought thereon by the bank. Defendants ask that Miller's claim be reduced to $613.54, and that they be permitted to undertake his defense in the suit upon the check and save him harmless. To this course Miller now assents. The decree will be so modified.

Except in the particulars pointed out, the decree of the court below stands affirmed.

STEERE, C. J., and MOORE, MCALVAY, KUHN, STONE, OSTRANDER, and BIRD, JJ., concurred.